IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| KWAN HINTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:09cv469–HEH |
| | ) | |
| HARRIS L. DIGGS, JR., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>
### (Granting Motion for Summary Judgment)

Kwan Hinton, a Virginia inmate proceeding *in forma pauperis*, filed this civil

rights action alleging that his rights were violated in conjunction with his conviction of an

institutional infraction.   Hinton names Inmate Hearings Officer D. Saunders, Warden

Harris L. Diggs, Assistant Warden J.R. Townsend, Major S. Clary, Investigator Walker,

Captain P. White, Sergeant V. Gray and Correctional Officer Pulliam as defendants

(hereinafter collectively "Defendants").   Defendants have moved for summary judgment.

Hinton has responded.   The matter is ripe for disposition.

## I.  Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a).  It is the responsibility of the party seeking summary

judgment to inform the court of the basis for the motion, and to identify the parts of the

record which demonstrate the absence of a genuine issue of material fact. *See Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted).  When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).  "The Court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).  In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Nevertheless, the nonmoving party cannot "'create a genuine issue of material fact through mere speculation or the building of one inference upon another.'" *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985)).

In support of their motion for summary judgment, Defendants submitted affidavits and copies of business records.  Hinton responded by submitting his own affidavit.  In light of the foregoing, the following relevant facts are established for purposes of the motion for summary judgment.

2

## II.  Summary of Pertinent Facts

In November of 2008, Hinton was incarcerated in the Nottoway Correctional Center.  On November 26, 2008, Hinton asked Correctional Officer Pulliam if she could obtain some prayer oils for him and bring them into the institution.  Pulliam denied Hinton's request.  Pulliam then informed Lieutenant Ward that Hinton had asked her to obtain prayer oils for him.

On or about December 18, 2008,[1] Assistant Warden Townsend, Sgt. Walker, and Major Clary met with Hinton to discuss Hinton's request to Pulliam.  (Pl.'s Resp. Opp'n Summ. J. Pl.'s Aff. ("Pl. Aff.") ¶ 2.)  During that meeting, Hinton told Clary that he knew Pulliam from the streets.  (Defs.' Mem. Supp. Mot. Summ. J. Ex. III ¶ 5.)  Clary informed Hinton that he would be going to segregation.  (Pl. Aff. ¶ 2.)  Shortly after the meeting, Sergeant Gray presented Hinton with a Disciplinary Offense Report, which charged Hinton with Disciplinary Offense Code 135 – Solicitation of Staff Misconduct.   After reading Hinton his rights, Gray presented Hinton with a Penalty Offer Form.  Hinton was offered the penalty of a $12.00 fine.  (Defs.' Mem. Supp. Summ. J. Ex. VI ¶ 6.)

Hinton "told [D]efendant Gray that because he did in fact sought [sic] oil from [D]efendant Pulliam, he would accept the penalty offer, but only on the condition that he would not be sent to segregation."  (Pl.'s Aff. ¶ 6.)  "Defendant White agreed and Plaintiff accepted the penalty offer."  (*Id.* ¶ 7.)  Hinton did not go to segregation that day.

---

[1] Defendants assert that this meeting occurred on December 16, 2008.  (Defs.' Mem. Supp. Mot. Summ. J. Ex. III ¶ 4.)

Nevertheless, Hinton's penalty offer form does not indicate that by accepting the penalty

offer he is insulated from any further repercussions for his misconduct. (Defs.' Mem.

Supp. Mot. Summ. J. Ex. VI, Encl. B, Penalty Offer.)

Hinton remained in the general population for the next five days during which an

internal investigation was conducted.  The investigation revealed that Hinton "dated

defendant Pulliam's sister for several years and on occasion babysat for Pulliam." (Pl.'s

Aff. ¶ 8.)  Based on this information, Warden Diggs decided to assign Hinton to

segregation and transfer him to a different institution. (Defs.' Mem. Supp. Mot. Summ. J.

Ex. VII ¶ 6.)  Warden Diggs explained that Hinton's past relationship with Pulliam

became a security concern because Hinton had attempted to leverage that relationship to

inject contraband into the institution.  (*Id.*)

### III. Analysis

**A.    Hinton's Claim**

Hinton contends that he is entitled to relief upon the following ground:

> Defendants deliberately conspired to circumvent Va. DOC policy and
> procedures by arbitrarily assigning Plaintiff to segregation detention as a
> second punitive penalty after Plaintiff waived his right to a due process
> disciplinary hearing on an administrative promise that Plaintiff would retain
> his job and general population status upon accepting Defendants['] penalty
> offer of only a 12 dollars fine.

(Am. Compl. 1–2 (capitalization corrected).)  Essentially, Hinton contends that his right

to due process was violated when he was placed in segregation and lost his job, despite

4

Defendants' assurances that suggested the only repercussion for his misconduct would be a $12.00 fine.

## B.    Due Process

The Due Process Clause[2] applies when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972).  The first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest.[3] *See Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997).  Prior to addressing Hinton's assertion of a protected liberty interest in avoiding segregation, it is appropriate to dispense with his suggestion that he had a protected interest in retaining his prison job.  The law is clear that Hinton did not enjoy a protected property or liberty interest in retaining his prison job.  *Henderson v. Capital Constr.*, 3:08cv207-HEH, 2011 WL 977580, at *5 (E.D. Va. Mar. 15, 2011) (citing *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996); *Backus v. Ward*, No. 98-6331, 1998 WL 372377, at *1 (4th Cir. June 8, 1998); *Altizer v. Paderick*, 569 F.2d 812, 813 (4th Cir. 1978)); *Quarles v. Dillman*, No. 7:11-cv-00217, 2011 WL 1869961, at *2

---

[2] "No State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. XIV, § 1.

[3] Contrary to Hinton's suggestion, he cannot establish a due process violation by demonstrating Defendants did not abide by the pertinent regulations. "[A] state's failure to abide by its own procedural regulations before imposing disciplinary segregation or another less favorable housing assignment presents no federal due process issue." *Gilmore v. Johnson*, 1:09cv133 (LO/TCB), 2010 WL 1039860, at *2 (E.D. Va. Mar. 17, 2010) (citing *Riccio v. Cnty. of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990)).

(W.D. Va. May 16, 2011) (citing cases). Accordingly, Hinton's due process claim based on the loss of his prison job lacks merit and will be dismissed.

### 1.    Liberty Interest Conferred by the Constitution

Liberty interests "may arise from the Constitution itself, by reason of guarantees implicit in the word liberty, . . . or [they] may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005) (internal citations and quotations omitted). "With respect to interests arising directly under the Due Process Clause, the Supreme Court has narrowly circumscribed its scope to protect no more than . . . 'the most basic liberty interests in prisoners.'" *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)). "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes,* 427 U.S. 236, 242 (1976). Thus, "the liberty interest of a convicted defendant is substantially restricted and his confinement is properly subject to the management of prison officials, who for the order of the prison, the safety of prisoners, and the safety of themselves must have broad discretion in the management of the prison." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). "[C]hanges in a prisoner['s] location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges—matters

6

which every prisoner can anticipate are contemplated by his original sentence to prison—are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently." *Id.* (citing cases). Given these necessary restrictions, the Due Process Clause itself did not provide Hinton with a liberty interest in avoiding segregation. *See id.*; *Beverati*, 120 F.3d at 504 (implicitly concluding confinement in segregation for six months did not implicate a protected liberty interest conferred directly by the Constitution).

## 2.    State-Created Liberty Interest

To the extent Hinton contends that he enjoys a state-created liberty interest in avoiding segregation, he "must make a threshold showing that the deprivation imposed amounts to an 'atypical and significant hardship' or that it 'inevitably affect[s] the duration of his sentence.'" *Puranda v. Johnson*, No. 3:08CV687, 2009 WL 3175629, at *4 (E.D. Va. Sept. 30, 2009) (alteration in original) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995)). If Hinton makes this threshold showing, he then must identify the state regulatory or statutory language that creates a protected liberty interest in remaining free from segregated confinement. *See id.* Hinton fails to present any evidence that demonstrates confinement in segregation constitutes an "atypical and significant hardship." *Sandin*, 515 U.S. at 484; *see Beverati*, 120 F.3d at 504. Furthermore, Hinton has not identified any statutory or regulatory language that confers a liberty interest in

7

avoiding segregation. *Puranda*, 2009 WL 3175629, at *4 (citing *Abed v. Armstrong*, 209 F.3d 63, 66 (2d Cir. 2000)).  Accordingly, Hinton's due process claim will be dismissed.

The motion for summary judgment will be granted.  The action will be dismissed.

An appropriate Order shall accompany this Memorandum Opinion.

                                                    /s/
                                        _____
                                        HENRY E. HUDSON
                                        UNITED STATES DISTRICT JUDGE

Date: July 19, 2011
Richmond, Virginia

8